UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOHN RAFIQUE,                    )     NO. EDCV 09-0264-CT
                                 )
          Plaintiff,             )     OPINION AND ORDER
                                 )
          v.                     )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
          Defendant.             )
                                 )
_____)

     For the reasons set forth below, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. Section 405 (g) to defendant Commissioner of Social Security ("the Commissioner") for further administrative action consistent with this opinion and order.

## SUMMARY OF PROCEEDINGS

     On February 23, 2009, John Rafique ("plaintiff") filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act").  On May 21, 2009. plaintiff filed a brief with points and authorities in support of remand or reversal.  On May 26, 2009, the court issued a minute order in which

the court noted a material inconsistency between the record and the ALJ's decision.  The minute order gave the Commissioner the option to enter into a stipulation to remand or to file an opposition to plaintiff's brief.  The Commissioner elected the latter option.  On June 17, 2009, the Commissioner filed a brief in opposition to plaintiff's request for remand or reversal.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1.  Proceedings

On March 21, 2005, plaintiff protectively filed an application for Supplemental Security Income ("SSI"), alleging disability since February 22, 2005 (TR 115-18),[1] due to upper back pain, paranoia, and bi-polar disorder.  (TR 152.)  The application was denied initially and upon reconsideration.  (TR 86-90, 92-96.)

On October 28, 2005, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (TR 97.)  On January 28, 2008 and September 24, 2008, plaintiff, represented by an attorney, appeared for hearings before an ALJ.  (TR 54-83.)

On October 1, 2008, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for benefits.  (TR 14-21.)  On November 2, 2008, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision.  (TR 7.)  On December 12, 2008, the request was denied.  (TR 4-6.)  Accordingly, the ALJ's decision stands as the final decision of the

---

[1]  "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

1  Commissioner.

2      Plaintiff subsequently sought judicial review in this court.

3          2.   Summary Of The Evidence

4      The ALJ's decision is attached as an exhibit to this opinion and

5  order and materially summarizes the evidence in the case.

6

7                    PLAINTIFF'S CONTENTIONS

8      Plaintiff contends the ALJ failed properly to:

9  1.   Consider the treating physician's opinion;

10 2.   Consider the lay witness testimony;

11 3.   Consider the consultative examiner's findings regarding plaintiff's

12      multiple moderate limitations;

13 4.   Develop the record regarding plaintiff's educational records;

14 5.   Consider state agency findings regarding plaintiff's mental

15      limitations; and,

16 6.   Obtain vocational expert testimony.

17

18                    STANDARD OF REVIEW

19     Under 42 U.S.C. § 405 (g), this court reviews the Commissioner's

20 decision to determine if: (1) the Commissioner's findings are supported

21 by substantial evidence; and, (2) the Commissioner used proper legal

22 standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).

23 Substantial evidence means "more than a mere scintilla," Richardson v.

24 Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.

25 Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

26     When the evidence can reasonably support either affirming or

27 reversing the Commissioner's conclusion, however, the Court may not

28                              3

substitute its judgment for that of the Commissioner.   <u>Flaten v. Sec'y</u> <u>of Health and Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."   42 U.S.C. § 405 (g).   Remand is appropriate where additional proceedings would remedy defects in the Commissioner's decision.   <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989).

DISCUSSION

1.   <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.   First, it is determined whether the person is engaged in "substantial gainful activity."   If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.   If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment,"

4

1  the person is conclusively presumed to be disabled.

2      Fourth, if the impairment does not meet or equal a "listed

3  impairment," it is determined whether the impairment prevents the person

4  from performing past relevant work.  If the person can perform past

5  relevant work, benefits are denied.

6      Fifth, if the person cannot perform past relevant work, the burden

7  shifts to the Commissioner to show that the person is able to perform

8  other kinds of work.  The person is entitled to benefits only if the

9  person is unable to perform other work.  20 C.F.R. § 416.920; Bowen v.

10  Yuckert, 482 U.S. 137, 140-42 (1987).

11      2.   Issues

12           A.   Treating physician (Issue # 1)

13      Plaintiff contends that the ALJ failed to properly consider

14  plaintiff's treating physician's opinion regarding plaintiff's mental

15  abilities.  The treating physician found that plaintiff's thought

16  process was blocked, circumstantial, rambling, and tangential.  (TR

17  289).  According to plaintiff, the ALJ did not account for this opinion

18  in making his finding that plaintiff had the residual functional

19  capacity to perform light work.

20      A treating physician's opinion generally is entitled to great

21  weight.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

22  (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)); Sprague

23  v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  "The treating

24  physician's opinion is not, however, necessarily conclusive as to either

25  a physical condition or the ultimate issue of disability." Andrews v.

26  Shalala, 53 F.3d at 1041 (citing Magallanes v. Bowen, 881 F.2d at 751).

27  The weight given a treating physician's opinion depends on whether it is

28                                    5

supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527, 416.927.

Notwithstanding this, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of a treating physician and may reject the controverted opinion of an treating physician only for "specific and legitimate reasons that are supported by substantial evidence." Id. at 830-31. Accordingly, it is error for an ALJ to implicitly reject the controverted opinion of a treating physician without setting forth specific, legitimate reasons for doing so. See Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996); Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (opinion of a treating doctor, "even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record").

Here, despite plaintiff's characterizations of the ALJ's assessment, the record shows that the ALJ not only accepted the treating physician's opinion, but that the ALJ relied upon that opinion in finding that plaintiff was not disabled. (TR 16). In his decision, the ALJ accurately set forth a summary of treating physician's findings regarding plaintiff's intellectual functioning, his mood, and his behavior. (Id.). Indeed, the ALJ explicitly referenced the aspects of the treating physician's opinion that plaintiff faults the ALJ for ignoring:

> Despite his depressed mood, mental status exam
> in June 2008 showed a normal appearance,
> normal behavior (speech, motor activity, eye
> contact, interactions; normal sensorium

6

1          (including   orientation,   concentration,   and

2          memory); with thought blocking, circumstantial

3          thinking,   rambling   or   tangential   thinking,

4          ideas   of   reference,   paranoia,   thought

5          blocking, and thought insertion.

6    (TR 16).

7         In short, the ALJ accurately summarized the treating physician's

8    opinion inasmuch as it was relevant to plaintiff's medical conditions

9    and ability to work.  The ALJ, therefore, did not materially err in this

10   regard.

11            B.   Lay witness testimony (Issue # 2)

12        Plaintiff next contends that the ALJ failed to properly evaluate

13   the lay witness evidence in the record.   The lay witness evidence

14   consisted of plaintiff's brother's responses to a questionnaire

15   regarding plaintiff's physical and mental abilities.  (TR 158-65).

16   Plaintiff's brother stated that plaintiff's illnesses and injuries

17   adversely affected plaintiff's ability to lift, squat, bend, and kneel.

18   Furthermore, plaintiff's brother stated that plaintiff's illness and

19   injuries   adversely   affected   plaintiff's   memory,   understanding,

20   concentration, and ability to follow instructions.  (TR 163).  Plaintiff

21   faults the ALJ for failing to specifically reference and consider these

22   statements.

23        "[D]escriptions by friends and family members in a position to

24   observe [plaintiff's] symptoms and daily activities have routinely been

25   treated as competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232

26   (9th Cir. 1987); see also Crane v. Shalala, 76 F.3d 251, 254 (1996).

27   The ALJ may not discount witness reports solely because they were

28

procured by plaintiff.   <u>Crane</u>, 76 F.3d at 254 (citing <u>Ratto v. Secretary, Dept. of Health & Human Servs.</u>, 839 F. Supp. 1415, 1426 (D. Or. 1993)).   Rather, if the ALJ wishes to discount the testimony of a lay witness, the ALJ must give reasons that are germane to that witness. <u>Crane</u>, 76 F.3d at 254 (citing <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993)).

Here, the ALJ committed no material error in assessing plaintiff's brother's questionnaire responses.   While the ALJ did not specifically reference the responses in his decision, the ALJ's summary of the medical evidence nevertheless accounted for each of the purported limitations identified in the questionnaire responses.   For example, the ALJ noted that "[t]he record documents neck pain, back pain, and right knee pain" and that there was MRI and x-ray evidence showing early degenerative changes in the cervical spine and mild degenerative changes in the lumbar spine.   (TR 16).   These findings render plaintiff's brother's responses merely cumulative of the medical evidence in the record.   Furthermore, plaintiff's brother's responses regarding plaintiff's mental functioning was equally cumulative of the medical evidence identified and summarized by the ALJ.   For example, after summarizing the medical evidence regarding plaintiff's mental functioning, the ALJ noted that plaintiff had moderate difficulties with respect to concentration, persistence, and pace.   (TR 17).   Thus, the court is confident that "no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." <u>Stout v. Comm'r of Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006).

Given the ALJ's acceptance of and summary of the medical evidence

8

regarding the impacts of plaintiff's impairments, the ALJ did not materially err in failing to specifically discuss the lay witness statements of plaintiff's brother.

        C.   <u>Consultative examiner's statements regarding educational records</u> (Issue # 3 and Issue # 4)

Plaintiff asserts two challenges regarding the ALJ's evaluation of an opinion by Ahmad R. Riahinejad, Ph.D., a psychologist who examined plaintiff. After examining plaintiff, Dr. Riahinejad diagnosed plaintiff with psychotic disorder, not otherwise specified and mild psychological stressors. (TR 232). Dr. Riahinejad also assessed plaintiff with a Global Assessment Functioning ("GAF") score of 55.[2] Dr. Riahinejad then noted that "[i]t would be ideal" to have either plaintiff's prison records or educational records to confirm the diagnosis. (<u>Id.</u>).

Dr. Riahinejad was unable to definitively opine about plaintiff's work related abilities because plaintiff "did not put forth his best effort in testing." (<u>Id.</u>). Nevertheless, Dr. Riahinejad observed that plaintiff was able to understand, remember, and carry out simple instructions without much difficulty.

Plaintiff now contends that the ALJ committed two errors in connection with Dr. Riahinejad's opinion. First, plaintiff asserts that the ALJ rejected Dr. Riahinejad's opinion that additional records were needed and, instead, improperly noted that plaintiff failed to put forth his best effort during the exam. Second, plaintiff faults the ALJ for

---

[2]  "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." <u>Vargas v. Lambert</u>, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

failing to discharge his duty to properly develop the record by obtaining the records that Dr. Riahinejad identified in his opinion.

### 1.   The ALJ's Evaluation of Dr. Riahinejad's Opinion

The opinion of an examining physician is entitled to greater weight than that of a non-examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). As with a treating physician, the Commissioner must present "clear and convincing" reasons for rejecting the uncontroverted opinion of an examining physician and may reject the controverted opinion of an examining physician only for "specific and legitimate reasons that are supported by substantial evidence." Id. at 830-31. It is error for an ALJ to neither explicitly reject the opinion of an examining physician nor set forth specific, legitimate reasons for crediting a non-examining medical advisor over an examining physician. Nguyen v. Chater, 100 F.3d 1462 (9th Cir. 1996).

Here, the ALJ did not materially err in evaluating Dr. Riahinejad's opinion. First, Dr. Riahinejad did not condition his diagnosis on the availability of plaintiff's prison or educational records. Although Dr. Riahinejad suggested that having those records would be ideal, he did not state that they were essential to his diagnosis. Nor did he suggest in any way that those records might undermine his diagnosis or that the missing records undermined his confidence in the accuracy of his opinion.

Second, the ALJ was free to comment on plaintiff's lack of effort during the examination. In doing so, the ALJ did not mischaracterize Dr. Riahinejad's opinion. On the contrary, the ALJ faithfully reported what Dr. Riahinejad observed. Compare (TR 18) ("It was noted that the claimant was not putting for this [sic] best effort under formal

10

psychological evaluation."); with (TR 232) ("As the claimant did not put his best effort into the testing, it would be difficult to comment on his work related abilities. . . .").

Moreover, plaintiff's attempt to conflate the lack of records with the ALJ's statement regarding plaintiff's lack of effort in unavailing. The ALJ's faithful reporting of Dr. Riahinejad's observation about plaintiff's lack of effort had nothing to do with whether plaintiff's prison or educational records were obtained. Rather, Dr. Riahinejad stated only that it would be ideal - though not essential - to have those records to confirm his diagnosis. But Dr. Riahinejad said nothing to indicate that those records would undermine his unequivocal observation regarding plaintiff's lack of effort.

2.   The Development of the Record

"In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that [plaintiff's] interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (citing Thompson v. Schweiker, 665 F.2d 936, 941 (9th Cir. 1982)); see also Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  This duty exists even when the plaintiff is represented by counsel.  Brown, 713 F.2d at 443.

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" Tonapetyan, 242 F.3d at 1150 (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ may discharge this duty in several ways, including: (1) subpoenaing plaintiff's physicians; (2) submitting questions to plaintiff's physicians; (3) continuing the hearing; or, (4) keeping the

record open after the hearing to allow for supplementation of the record.   Id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Smolen, 80 F.3d at 1288)).

Here, the ALJ did not commit material error in developing the record.   First, as discussed above, Dr. Riahinejad never stated that plaintiff's prison or educational records were essential to his diagnosis.   Rather, he suggested only that "it would be ideal" to have those records – and only because they would confirm his diagnosis.   (TR 232).   Thus, neither Dr. Riahinejad's opinion nor the other medical evidence in the record was ambiguous regarding plaintiff's mental functioning capacity.

Second, other medical evidence in the record detailed plaintiff's mental functioning capacity.   (See TR 286-01).   Specifically, the record included plaintiff's treating physician's treatment notes.   (Id.).   Those treatment notes reflected plaintiff's condition approximately three years after Dr. Riahinejad examined plaintiff.

Finally, the court notes that the ALJ assessed more severe limitations on plaintiff's mental functioning capacity than did Dr. Riahinejad.   Whereas Dr. Riahinejad opined that plaintiff had little difficultly with understanding, remembering, and carrying out simple instructions (TR 232), the ALJ found that plaintiff had moderate difficulties in the areas in concentration, persistence, and pace.   (Id. at 17).

Given the lack of ambiguous evidence, the more recent medical evidence, and the ALJ's ultimate findings, the court concludes that the ALJ did not materially err in failing to obtain plaintiff's prison and educational records.

12

1          D.   <u>State agency psychologist</u> (Issue # 5)

2          Plaintiff contends that the ALJ failed to properly consider the

3    opinion of the state agency psychologist.   Specifically, plaintiff

4    asserts that the ALJ failed to consider several moderate limitations

5    that the state agency psychologist assessed regarding plaintiff's

6    ability to maintain attention and concentration for extended periods and

7    plaintiff's ability to understand, remember, and carry out detailed

8    instructions.   (TR 247).

9          With these limitations in mind, the state agency psychologist

10   concluded that plaintiff could sustain simple repetitive tasks with

11   adequate pace and persistence and that plaintiff could adapt and relate

12   to coworkers and supervisors, but could not work with the public.  (<u>Id.</u>

13   at 405).  Citing this assessment, the ALJ concluded that plaintiff could

14   "perform simple repetitive tasks in a non-public environment."   (TR at

15   19).   As explained below, the ALJ committed no material error in so

16   concluding.

17         State agency medical consultants are "highly qualified physicians"

18   who are also "experts in Social Security disability evaluation."   20

19   C.F.R. §§ 404.1527(f)(2), 416.927(f)(2). Nevertheless, an ALJ is not

20   bound by an examining medical expert's opinion and may reject such an

21   opinion.   <u>Gallant</u>, 753 F.2d 1450, 1454 (9th Cir. 1984).   But where no

22   evidence contradicts the examining physician's opinion, the ALJ must

23   provide "clear and convincing" reasons to reject the opinion.   <u>See</u>

24   <u>Lester v. Chater</u>, 81 F.3d at 830 ("As is the case with the opinion of a

25   treating physician, the Commissioner must provide 'clear and convincing'

26   reasons for rejecting the uncontradicted opinion of an examining

27   physician.")   Even if medical evidence in the record contradicts the

28                                    13

examining physician's opinion, the ALJ must still provide "specific and legitimate" reasons to reject his opinion. Id.; see also Andrews, 53 F.3d at 1042.

Here, the ALJ did not commit material error in assessing the state agency psychologist's opinion. Plaintiff's main complaint with the ALJ's evaluation of the state agency psychologist's opinion is that the ALJ's decision did not specifically mention the moderate limitations that the state agency psychologist identified in his opinion. However, the ALJ's decision accounted for the limitations set forth in the state agency psychologist's opinion. Specifically, the ALJ concluded that the medical evidence showed that plaintiff had "moderate difficulties" "with regard to concentration, persistence, and pace." (TR 17). This conclusion comports with the limitations set forth by the state agency psychologist.

Moreover, the ALJ's ultimate conclusions regarding plaintiff's residual functional capacity likewise comport with the state agency psychologist's findings. Specifically, the ALJ concluded that plaintiff had the residual functional capacity to perform only simple repetitive tasks with no public contact in a low stress work environment. (TR 17-18). This conclusion accounts for the moderate limitations that the state agency psychologist assessed, and it also comports with the state agency psychologist's conclusions regarding plaintiff's capabilities. (See id. at 247) (noting that plaintiff was "not significantly limited" in ability to understand, carry out, remember short and simple instructions).

///

///

14

1          E.    Vocational expert testimony (Issue # 6)

2          Plaintiff next contends that the ALJ erred in failing to obtain a

3    vocational expert to determine plaintiff's ability to perform other work

4    in the economy.   According to plaintiff, the ALJ erred in two ways in

5    this respect.   First, although the ALJ stated he was relying on the

6    testimony of a vocational expert, the record shows that no vocational

7    expert testified at plaintiff's hearing.   Second, plaintiff contends

8    that the ALJ was required to obtain vocational expert testimony because

9    the ALJ found that plaintiff suffered from both severe exertional and

10   severe non-exertional impairments.[3]

11         There are two ways for the Commissioner to meet the burden of

12   showing that there is other work in "significant numbers" in the

13   national economy that plaintiff can do: (1) by the testimony of a

14   vocational expert, or (2) by reference to the Medical-Vocational

15   Guidelines ("the Grids") at 20 C.F.R. pt. 404, subpt. P, app. 2. If the

16   Commissioner meets this burden, the plaintiff is "not disabled " and

17   therefore not entitled to disability insurance benefits. See 20 C.F.R.

18   §§ 404.1520(f), 404.1562.   If the Commissioner cannot meet this burden,

19   then the plaintiff is "disabled" and therefore entitled to disability

20   benefits.

21         "The grids are applied at the fifth step of the analysis under 20

22   C.F.R. § 404.1520, and present, in table form, a short-hand method for

23   determining the availability and numbers of suitable jobs for a

24   _____

25        [3] Non-exertional limitations are comprised of non-strength
     related limitations, such as mental, sensory, postural,
26   manipulative, and environmental limitations. Cooper v. Sullivan,
     880 F.2d. 1152, 1155 n.7 (9th Cir. 1989)(citing Desrosiers v.
27   Sec'y of Health and Hum. Servs., 846 F.2d 573, 579 (9th Cir.
     1988)).

28

[plaintiff]." <u>See</u> <u>Lounsburry v. Barnhart</u>, 468 F.3d 1111, 1115 (9th Cir. 2006).   However, the grids can be used only where "[plaintiff's] functional limitations fall into a standardized pattern 'accurately and completely' described by the grids." <u>Tackett v. Apfel</u>, 180 F.3d 1094 (9th Cir. 1999).   And where, as here, the plaintiff suffers from both severe exertional and non-exertional limitations, the ALJ cannot rely exclusively on the grids to reach a finding of non-disability.   <u>Id.</u> at 1115-16.  "Because the grids are not designed to establish automatically the existence of jobs for persons with both severe exertional and non-exertional impairments, they may not be used to direct a conclusion of nondisability." <u>Id.</u> at 1116 (citing <u>Tackett</u>, 180 F.3d at 1102).

Here, assuming that the ALJ could have relied exclusively on the grids, the ALJ nevertheless committed material error in concluding that plaintiff was able to perform other work.  As plaintiff has pointed out and as the Commissioner has conceded, the ALJ mistakenly stated that his conclusion was based on the testimony of a vocational expert.  In truth, no vocational expert testimony was taken.  Although the Commissioner speculates that the ALJ's statement to the contrary represented merely a typographical error caused by the ALJ's use of a preexisting template, there is no evidence to support this speculation.  The court's role is not to engage in speculation, but rather to review the decision below. In this case, nothing in either the ALJ's decision or in the Appeals Council's affirmance of the ALJ's decision supports the Commissioner's

///

///

///

///

16

otherwise unsupported assertion that the ALJ committed a typographical error.

## REMAND IS APPROPRIATE IN THIS CASE

The decision whether to remand a case for additional evidence is within the discretion of the court. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987). Remand is appropriate if the record is incomplete and additional proceedings would remedy defects in the Commissioner's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

Having considered the record as a whole, it appears that the ALJ's conclusion regarding plaintiff's ability to perform other work is not supported by the existing record. Accordingly, the ALJ should take further administrative action consistent with this opinion. If, after doing so, the ALJ concludes that plaintiff is otherwise disabled, the ALJ should consider the extent, if any, to which plaintiff's history of alcohol abuse contributed to his impairments.

## CONCLUSION

Accordingly, it is ordered that the matter be **REMANDED** pursuant to sentence four of 42 U.S.C. §405(g) to the Commissioner for further administrative action consistent with this opinion.

DATED: June 18, 2009

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

17

**SOCIAL SECURITY ADMINISTRATION**
Office of Disability Adjudication and Review          **14**

## DECISION

<u>**IN THE CASE OF**</u>                    <u>**CLAIM FOR**</u>

John Ahmad Rafique                Supplemental Security Income
(Claimant)

                                    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
(Wage Earner)                     (Social Security Number)

## <u>JURISDICTION AND PROCEDURAL HISTORY</u>

On March 21, 2005, the claimant protectively filed an application for supplemental security income, alleging disability beginning February 22, 2005. The claim was denied initially on July 12, 2005, and upon reconsideration on October 19, 2005. Thereafter, the claimant filed a timely written request for hearing on October 28, 2005 (20 CFR 416.1429 *et seq.*). On September 24, 2008, the undersigned held a video hearing (20 CFR 416.1436(c)). The claimant appeared in San Bernardino, CA, and the undersigned presided over the hearing from San Diego, CA. The claimant is represented by Bill Latour, an attorney.

## <u>ISSUES</u>

The issue is whether the claimant is disabled under section 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

Although supplemental security income is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), the undersigned has considered the complete medical history consistent with 20 CFR 416.912(d).

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act since March 21, 2005, the date the application was filed.

## <u>APPLICABLE LAW</u>

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.



**15**

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 416.974 and 416.975). If an individual engages in SGA, he is not disabled regardless of how severe his physical or mental impairments are and regardless of his age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 416.920(e)). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 416.920(e) and 416.945; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of his past relevant work (20 CFR 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 416.960(b) and 416.965). If the claimant has the residual functional capacity to do his past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.



John Ahmad Rafique (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)                                    Page 3 of 3

**16**

At the last step of the sequential evaluation process (20 CFR 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering his residual functional capacity, age, education, and work experience. If the claimant is able to do other work, he is not disabled. If the claimant is not able to do other work and meets the duration requirement, he is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant has not engaged in substantial gainful activity since March 21, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).**

**2.   The claimant has the following severe impairments: mild degenerative disc disease of the cervical spine; and schizoaffective disorder, depressed versus paranoid type (20 CFR 416.920(c)).**

The claimant has a history of mental problems with psychotic features (delusions, auditory hallucinations, paranoia), depression, and anxiety (Exhibits C1F, C2F, C4F and C13F). In his most recent assessment, he indicated that he does not have any current auditory hallucinations (Exhibit C13F/6). He has denied significant sleep problems (Id.). He has been diagnosed with a schizoaffective disorder, depressed versus paranoid type (Exhibit C13F/6-7, 17).

He has a substance abuse (cannabis, methamphetamine) disorder that is in remission (Exhibit C13F).

When evaluated in June 2005, mental status exam revealed that he had organized thoughts with psychomotor slowing. Although he had a depressed mood, he had no cognitive deficits (Exhibit C4F/2-3). Despite his depressed mood, mental status exam in June 2008 showed a normal appearance, normal behavior (speech, motor activity, eye contact, interactions; normal sensorium (including orientation, concentration, and memory); with thought blocking, circumstantial thinking, rambling or tangential thinking, ideas of reference, paranoia, thought broadcasting, and thought insertion (e.g. Exhibits and C13F/5, 9-10).

The record documents neck pain, back pain, and right knee pain (Exhibits C3F, C11F and C12F). X-ray of the cervical spine showed osteoarthritic changes at C6-7 with degenerative join and disc disease (Exhibits C3F/5-6; and C11F/67. MRI of the cervical spine showed early degenerative changes (Exhibits C11F/2-3: and C12F/2). X-ray of the lumbar spine showed mild degenerative changes (Exhibits 3F/5, 7; and C11F/6). MRI of the lumbar spine showed no degenerative changes and only revealed minimal bulging of the annulus at the L4-5 level with no significant



**17**

canal compromise (Exhibits C11F/4). X-ray of the left shoulder and X-ray of the right knee did not show any significant abnormal changes (Exhibit C3F/5. 8-9). MRI of the right shoulder showed degenerative changes of the acromioclavicular joint and a downsloping acromion (Exhibit C12F/7). MRI of the right knee showed small joint effusion, ACL insufficiency and patellofemoral degenerative changes (Exhibit C9F/1). Physical exams show no muscle spasms, positive straight leg raise testing, significant restriction in the range of motion of the lumbar spine, or any neurological deficits (e.g. Exhibits 3F/2-4; C12F/8).

**3.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).**

The claimant's mental impairment does not meet or medically equal the criteria of listing 12.03. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has mild difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

Because the claimant's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR**



**416.967(b) mentally limited to simple and repetitive tasks with no public contact in a low stress work environment.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

The claimant has alleged disability due to back and neck pain, depression, paranoia, and anxiety.

It was noted that the claimant was not putting for this best effort under formal psychological evaluation (Exhibit C4/5).

His allegations of pain and mental illness are inconsistent with his work at a car wash that was documented in July 2008 (e.g. Exhibit C12F/3).

The weight of the objective evidence does not support the claims of the claimant's disabling limitations to the degree alleged. X-ray of the cervical spine showed osteoarthritic changes at C6-7 with degenerative join and disc disease (Exhibits C3F/5-6; and C11F/67. MRI of the cervical spine showed early degenerative changes (Exhibits C11F/2-3: and C12F/2). X-ray of the lumbar spine showed mild degenerative changes (Exhibits 3F/5, 7; and C11F/6). MRI of the lumbar spine showed no degenerative changes and only revealed minimal bulging of the annulus at the L4-5 level with no significant canal compromise (Exhibits C11F/4). X-ray of the left shoulder and X-ray of the right knee did not show any significant abnormal changes (Exhibit C3F/5. 8-9). MRI of the right shoulder showed degenerative changes of the acromioclavicular joint and a downsloping acromion (Exhibit C12F/7). MRI of the right knee showed small joint effusion, ACL insufficiency and patellofemoral degenerative changes (Exhibit C9F/1). Physical exams show no muscle spasms, positive straight leg raise testing, significant restriction in the range of motion of the lumbar spine, or any neurological deficits (e.g. Exhibits 3F/2-4; C12F/8).

Despite his pain, he has a normal gait and does not require any assistive devices to ambulate (e.g. Exhibit C12F/4).

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The claimant's course of treatment since his alleged disability onset date has generally reflected a conservative approach. He has only been taking medications such as Ibuprofen and Tylenol #3 for his allegedly severe pain.

The record does not show that the claimant requires any special accommodations (e.g., special breaks or positions) to relieve his pain or other symptoms.

In contrast to the allegations of the claimant's disabling fatigue and weakness, he does not exhibit any significant atrophy, loss of strength, or difficulty moving that are indicative of severe and disabling pain.



John Ahmad Rafique (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)                                    Page 6 of 6

**19**

Although the claimant has been prescribed appropriate medications for the alleged impairments, he has not been taking it on a consistent basis (e.g. Exhibits C4F/2; C13F/3). Further, the objective medical evidence shows that the medications have been relatively effective in controlling the claimant's symptoms. Moreover, the claimant has not alleged any side effects from the use of medications (e.g. Exhibits C2E/5; C6E/3; C8E/3).

There is no evidence of loss of weight due to loss of appetite due to pain or depression.

There is no evidence of sleep deprivation due to pain or depression.

There is no evidence of cognitive deficits due to pain or depression.

Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

None of the claimant's physicians have opined that he is totally and permanently disabled from any kind of work.

Consequently, the claimant's allegations are not credible to establish a more restrictive residual functional capacity than that found above.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

As for the opinion evidence, I have given significant weight to the opinion of consulting psychologist Ahmad R. Riahignejad, PhD who diagnosed a psychotic disorder NOS and assigned the claimant a GAF score of 55 (Exhibit C4F/5). His opinion is substantiated by his mental status exam and psychological testing as well as recent treating records (Exhibit C13F). I have also given significant weight to the opinion of consulting internist John Sedgh, M.D., who diagnosed upper and low back arthritis and left shoulder arthritis (Exhibit C3F). His opinion is substantiated by his mental status exam and psychological testing as well as recent treating records (Exhibit C13F).

In sum, the above residual functional capacity assessment is supported by the substantial evidence of record and is consistent with the opinion of consulting internist John Sedgh, M.D. (Exhibit C3F/5) and State agency medical consultant assessment (Exhibit C7F).



From a mental standpoint, the mental residual functional capacity assessment is supported by the substantial evidence of record and is consistent with the opinion of consulting psychologist A. Riahinejad (Exhibit C4F/5) and the State agency psychiatric consultant assessment (Exhibits C5F and C6F).

**5.   The claimant has no past relevant work (20 CFR 416.965).**

The claimant has no past relevant work.

**6.   The claimant was born on September 16, 1965 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).**

At all relevant times, the claimant has been a younger individual.

**7.   The claimant has more than a high school education (20 CFR 416.964).**

The claimant has a high school education and has completed one year of college coursework.

**8.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. The limitations do not significantly erode the unskilled light occupational base.



John Ahmad Rafique (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)

**21**

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**10. The claimant has not been under a disability, as defined in the Social Security Act, since March 21, 2005, the date the application was filed (20 CFR 416.920(g)).**

### DECISION

Based on the application for supplemental security income protectively filed on March 21, 2005, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

/s/ *Edward D. Steinman*

for Bernard A. Trembly
_____
Bernard A. Trembly
Administrative Law Judge

October 1, 2008
_____
Date

